PER CURIAM.
¶1 Corey Hershey appeals a judgment of conviction for possession of child pornography. Hershey contends that the search warrant that police executed to search Hershey's home was unsupported by probable cause and that the court erred by applying the mandatory minimum at sentencing. For the reasons set forth in this opinion, we conclude that the search warrant was supported by probable cause and the court did not err at sentencing. We affirm.
¶2 In May 2015, police executed a search warrant to search Hershey's home in Holmen, Wisconsin. Police located child pornography on Hershey's computer. The State charged Hershey with three counts of possession of child pornography.
¶3 Hershey moved to suppress the evidence obtained during the search on grounds that the search warrant lacked probable cause. The circuit court denied the suppression motion. Pursuant to a plea agreement, Hershey pled guilty to one count of possession of child pornography.
¶4 Prior to sentencing, Hershey moved for a determination that the statutory three-year mandatory minimum for possession of child pornography did not apply to him. He argued that all of the facts in the search warrant affidavit occurred and were known to police prior to new legislation that changed the three-year minimum from presumptive to mandatory. Hershey argued that he committed the crime of possession of child pornography prior to the change in the law, making application of the mandatory minimum contrary to the ex post facto clause. The circuit court determined that the mandatory minimum applied to Hershey and that it did not violate the ex post facto clause. The court imposed the mandatory minimum of three years of incarceration, plus five years of extended supervision. Hershey appeals.
¶5 Hershey contends first that the search warrant affidavit did not establish probable cause for the search warrant. In our review of a challenge to a search warrant, we give deference to the judge's decision to issue the warrant. State v. Sloan , 2007 WI App 146, ¶8, 303 Wis. 2d 438, 736 N.W.2d 189. The inquiry before us is whether the issuing judge "was apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched." Id. (quoted source omitted). The judge may rely on "the usual inferences reasonable persons would draw from the facts presented." State v. Gralinski , 2007 WI App 233, ¶24, 306 Wis. 2d 101, 743 N.W.2d 448 (quoted source omitted). "We will uphold the decision to issue the warrant unless the facts in the supporting affidavit were clearly insufficient to support a finding of probable cause. In reviewing a probable cause assessment, we examine the totality of the circumstances." State v. Casarez , 2008 WI App 166, ¶10, 314 Wis. 2d 661, 762 N.W.2d 385 (quoted source omitted).
¶6 Here, the April 2015 search warrant affidavit set forth the following. The affiant, Crystal Sedevie, was an investigator with the Holmen Police Department, a Wisconsin Internet Crimes Against Children Affiliate, and a Special Deputy U.S. Marshal with the FBI Cybercrimes Task Force-Milwaukee. Sedevie knew, based on her personal observations, training, and experience, that: (1) the primary manner in which child pornography is produced, distributed, and possessed is through the use of computers and the internet; (2) each time an individual uses a computer to view an online digital image or video, that material is stored in the hard drive of the computer and a forensic examination of the hard drive can identify and retrieve the material, even if it has been deleted; (3) individuals who consume child pornography use places that they consider private and secure to download, store, and view child pornography, most often the individual's residence; (4) individuals who collect child pornography often seek to increase the size of their collections and maintain their collections for many years, and a collector almost never destroys the collection; and (5) individuals who have a sexual interest in children often seek out, possess and/or collect child pornography, and are not likely to voluntarily dispose of all of the images they possess.
¶7 Sedevie was also aware that, in July 2010, Dutch authorities began an investigation into websites that contained child pornography. The websites were created and maintained by Dutch citizen Ruud Van Haaren, and Hershey had transferred $7500 to Van Haaren's business in November 2009. Van Haaren informed investigators that Hershey had also made a payment to Van Haaren of $10,000 for unlimited access to all of the images and videos on Van Haaren's websites. Emails between Hershey and Van Haaren contained discussions about Hershey's webcam chats with "models" and Hershey's offer to wire money to Van Haaren for access to websites, with the most recent email in November 2009. Investigators discovered videos on Van Haaren's computer with the name "Corey" in the title, which investigators believed meant the videos were custom-made for Hershey, and which displayed pornography with a "model" who investigators believed to be seventeen. The "model" confirmed to investigators that she believed she was under eighteen when the videos were made, and that the videos were custom-made for Hershey.
¶8 Van Haaren and his accomplice, J.S.P.A., indicated that Hershey travelled to the Netherlands in 2008 and visited Van Haaren's studio during photo shoots of nude adult women. Another individual informed investigators that she engaged in a webchat with Hershey when she was fifteen years old, during which both were nude and she was instructed to perform sexual acts before the webcam, and that Hershey sent her "birthday money."
¶9 Law enforcement representatives verified Hershey's address in Holmen through the La Crosse County tax files. They also verified with an internet provider that Hershey received internet service at his residence. Additionally, they verified with the Department of Homeland Security that Hershey had travelled to the Netherlands in 2008. The affidavit sought a search warrant to search Hershey's residence for child pornography, including on computers and other digital devices.
¶10 Hershey argues that the search warrant affidavit was insufficient to establish probable cause to believe that Hershey possessed child pornography at his residence. He argues that the affidavit does not allege any illegal actions by Hershey at his residence, instead detailing actions by Hershey in the Netherlands and the basic facts of Hershey's address and access to the internet in Wisconsin. He also asserts that the affidavit sets forth mostly legal actions by Hershey with adult "models" in the Netherlands. Hershey asserts that there are factual questions as to whether the allegedly seventeen-year-old "model" in the described videos was under eighteen, whether the videos were custom-made for Hershey, and whether Hershey ever received the videos. He asserts that the affidavit established that Van Haaren's websites presented mostly legal sexually explicit images, and that some of the material on the websites would have been legal in the Netherlands even if illegal in the United States.
¶11 First, Hershey's argument that the affidavit lacked probable cause because it included descriptions of legal conduct by Hershey is unavailing. See State v. Schaefer , 2003 WI App 164, ¶17, 266 Wis. 2d 719, 668 N.W.2d 760 ("Although an individual fact in a series may be innocent in itself, when considered as a whole, the facts may warrant further investigation.") Second, we disagree with Hershey's contention that the affidavit was insufficient in that some of the allegations could have supported an inference of legal behavior. See State v. Higginbotham , 162 Wis. 2d 978, 994-95, 471 N.W.2d 24 (1991) (explaining that, where conduct supports inferences of innocent or criminal conduct, a neutral and detached magistrate may draw inference of criminal activity). Here, the allegations in the affidavit supported the reasonable inferences that Hershey had purchased unlimited access to websites that included images of child pornography, that Hershey had ordered custom-made child pornography, and that Hershey had paid for a sexual webchat session with a fifteen-year-old girl. Those inferences, together with the assertion that child pornography collectors seek to increase their collections and keep their collections for many years, and that Hershey maintained internet access at his Wisconsin residence, established probable cause to believe that evidence of possession of child pornography would be located at the residence. See State v. Silverstein , 2017 WI App 64, ¶22, 378 Wis. 2d 42, 902 N.W.2d 550 ("The well-established test for probable cause is that it is flexible, and is a practical commonsense decision, that is made considering the totality of the circumstances." (quoted sources omitted)).
¶12 Hershey also asserts that the affidavit did not establish the reliability of any of the information set forth because the FBI and Wisconsin police did not independently investigate and corroborate the information they received from Dutch authorities or explain why the Dutch authorities should be considered reliable. However, Sedevie set forth that she relied on information provided by Dutch authorities because that information was provided in the course of their official duties. See State v. Romero , 2009 WI 32, ¶21, 317 Wis. 2d 12, 765 N.W.2d 756 ("To demonstrate a declarant's veracity, facts must be brought to the warrant-issuing officer's attention to enable the officer to evaluate either the credibility of the declarant or the reliability of the particular information furnished."). Hershey also argues that the affidavit did not establish the reliability of information provided by the suspects, witnesses, or alleged victims in the Dutch investigation. However, Sedevie set forth information provided by the Dutch suspects, witnesses, and alleged victims that was claimed to be based on their personal observations and experiences and that at least partially corroborated each other and other information gathered by investigators. See id. , ¶¶21-22 (explaining that "[t]he reliability of the information may be shown by corroboration of details; this corroboration may be sufficient to support a search warrant," because "[i]f a declarant is shown to be right about some things, it may be inferred that he is probably right about other facts alleged"; and, "[t]he basis of a declarant's knowledge is most directly shown by an explanation of how the declarant came by his or her information."). Moreover, "[p]rove-up of every detail is not required in a warrant affidavit, as is consistent with the policy that is designed to encourage law enforcement to obtain search warrants in the first place." Silverstein , 378 Wis. 2d 42, ¶22. We do not "focus on individual parts" of a supporting affidavit to determine whether it established probable cause. Schaefer , 266 Wis. 2d 719, ¶17. Rather, we assess the "statements viewed in their entirety, and the reasonable inferences that may be drawn from those facts." Id. As set forth above, the facts in the affidavit, together with reasonable inferences from those facts, established probable cause.
¶13 Hershey also contends that, even if the affidavit did establish probable cause, probable cause was stale when the affidavit was executed in April 2015. He asserts that the delay of five years from the alleged activity in 2010 until the warrant was sought in 2015, without any intervening investigation to refresh those allegations, rendered the probable cause stale. See United States v. Batchelder , 824 F.2d 563, 564 (7th Cir. 1987) ("The age of the information supporting the application for a warrant is a factor that a magistrate should consider."). He argues that the "boilerplate" information as to child pornography collectors saving their collections for many years does not save the probable cause from staleness. Hershey asserts that the affidavit set forth unidentified expert "boilerplate" information as to child pornography collectors, and did not explain why those experts are reliable or provide facts connecting that information to Hershey. In support, he cites United States v. Weber , 923 F.2d 1338 (9th Cir. 1990).
¶14 In Weber , the Ninth Circuit Court of Appeals held that a search warrant affidavit failed to establish probable cause to search for child pornography when it relied on Weber's response to a government solicitation for orders of child pornography and "rambling boilerplate recitations" about "the habits of 'child molesters,' 'pedophiles,' and 'child pornography collectors,' " but "not a whit of evidence in the affidavit indicating that Weber was a 'child molester' " or any information as to "how many magazines or pictures one must buy in order to be defined as a 'collector.' " Weber , 923 F.2d at 1343-45. The court stated:
Had [the affiant] taken the time and conscientiously drafted an affidavit tailored to what he knew about Weber rather than submitting an affidavit describing generally information about different types of perverts who commit sex crimes against children, he might have realized that he did not know enough about Weber to state that there was reason to believe that Weber was one of the 'types' described or possessed any of the habits ascribed to such types.
Id. at 1345.
¶15 Assuming without deciding that Weber uses a proper frame of analysis, it is readily distinguishable. Here, Sedevie explained that she knew, based on her own extensive training and experience investigating child sex crimes, that collectors of child pornography keep their collections for many years and rarely dispose of the collection. Gralinski , 306 Wis. 2d 101, ¶¶30-31 (quoted source omitted) (explaining that "the issue of staleness [of a search warrant for child pornography] depends, in part, upon the tendencies of collectors of child pornography, as detailed in the special agent's affidavit," which included "the proclivity of pedophiles to retain this kind of information"). Sedevie also explained that she knew that images of child pornography could be recovered even after those images were deleted. See id. , ¶31 (staleness argument rejected where affidavit set forth that images could be recovered from computer even after they were deleted). Additionally, Sedevie did not simply recite the common behavior of child pornography collectors without connecting that information to Hershey. Rather, Sedevie alleged that Hershey had purchased unlimited access to websites that contained child pornography, had ordered custom-made child pornography, and had participated in a paid sexual webchat session with a fifteen-year-old girl.[1] Accordingly, we conclude that probable cause was not stale in April 2015.
¶16 Hershey also contends that the warrant lacked particularity because it did not explain how Sedevie had a sufficient basis to believe that the broad list of general items sought would be located in Hershey's residence, and because it authorized a wide-ranging search into Hershey's computers. See State v. Noll , 116 Wis. 2d 443, 450, 454-55, 343 N.W.2d 391 (1984) (explaining that "the particularity requirement prevents the government from engaging in general exploratory rummaging through a person's papers and effects in search of anything that might prove to be incriminating," and that "to satisfy the particularity requirement, the warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized"). We disagree. As set forth above, the affidavit explained the basis for Sedevie's belief that evidence of possession of child pornography would be located in Hershey's residence and on his computers. Moreover, we are not persuaded that the warrant was overbroad because it did not limit the search of Hershey's computers to prevent access to non-incriminating material. See State v. Rindfleisch , 2014 WI App 121, ¶40, 359 Wis. 2d 147, 857 N.W.2d 456 (explaining that "[l]aw enforcement officers have long had to separate the documents as to which seizure was authorized from the other documents" and that "[w]e see no constitutional imperative that would change the result simply because the object of the search is electronic data").
¶17 Hershey also contends that the search warrant affidavit omitted material information that would have undermined a finding of probable cause. See State v. Mann , 123 Wis. 2d 375, 385-86, 367 N.W.2d 209 (1985). He contends that the following facts, if included in the affidavit, would have led to a finding that the warrant lacked probable cause: (1) the legal age of consent in the Netherlands is 16; and (2) child pornography is defined in the Netherlands as pornographic images of a child who appears younger than eighteen. Hershey asserts that, by omitting these facts, Sedevie misled the issuing judge to believe that Hershey's conduct was illegal in the Netherlands. Again, we are not persuaded. The legality of Hershey's conduct in the Netherlands was not material to the determination of whether there was probable cause to believe that Hershey's residence contained evidence of the crime of possession of child pornography in Wisconsin. See id. at 388 (if a defendant claims a material fact was omitted from a search warrant affidavit, the circuit court is required to hold a hearing only if the fact "is critical to an impartial judge's fair determination of probable cause").
¶18 Finally, Hershey contends that the circuit court erred by imposing the three-year mandatory minimum. He argues that forensic evidence indicated that the last time he accessed the child pornography recovered from his computer was in July 2010. He points out that, in 2011, legislation was enacted that changed the presumptive three-year minimum period of initial confinement to a mandatory three-year minimum. See 2011 Wis. Act 272 (effective April 24, 2012). Hershey argues that police had all the information they needed to charge him in 2011, prior to the change in the law, and that they delayed the action against Hershey with no legitimate purpose. He also argues that, although he retained the computer with the stored child pornography in his residence, the fact that he did not access it since 2010 means that he did not "possess" it after that time. Thus, he argues, the ex post facto clause prohibited the court from sentencing him under the new statute. See State v. Thiel , 188 Wis. 2d 695, 703, 524 N.W.2d 641 (Wisconsin Constitution prohibits ex post facto law, that is, any law that makes more burdensome the punishment for a crime after its commission). We disagree.
¶19 Hershey pled guilty to one count of child pornography, admitting that, on May 4, 2015, he knowingly possessed an image of child pornography.[2] Hershey was sentenced for that crime according to the criminal statute in effect on the date the crime was committed. We discern no violation of the ex post facto clause. We affirm.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

Hershey again argues other inferences that the issuing judge could have drawn from the facts. As previously explained, the issuing judge was not required to draw innocent inferences from the facts when inferences of illegal conduct were also reasonable.

Hershey's admission that he knowingly possessed child pornography on May 4, 2015, is dispositive of Hershey's ex post facto argument. We also note, however, that we are not persuaded by Hershey's argument that a person does not "possess" child pornography that he has stored on his privately owned computer unless he accesses the images. Hershey's analogy between child pornography stored on the hard drive of a privately owned computer and the presence of child pornography on the internet is inapt. Simply put, images that a person has downloaded and stored on one's private computer are in that person's possession.