COURT OF APPEALS

DECISION

DATED AND FILED

August 15, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1978-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF857

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

FUE C. LOR,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Fue Lor appeals a judgment convicting him of several child sex offenses and possession of child pornography. He also appeals

an order denying his postconviction motion without an evidentiary hearing. Lor argues that the circuit court erred by denying his motion to suppress because the warrant used to search his cell phone was facially invalid. Lor also argues that the court erroneously denied his postconviction motion without holding an evidentiary hearing to consider whether law enforcement could have limited its search of his cell phone. We reject his arguments and affirm.

## BACKGROUND

¶2 In October 2017, law enforcement responded to a report of a male, later identified as Lor, firing a handgun inside of his father's residence. Lor's father informed officers that before the incident, his fourteen-year-old daughter, Saige,[1] had come home from school later than normal and then asked him if she could spend the evening with a friend. Upon further questioning, Saige told her father that she wanted to be with her friend "due to family stress." Saige explained that Lor had been texting her about his problems and "how nobody cared."

¶3 Lor's father further described how Lor arrived at the residence later in the evening and said that "he was not [doing] too good." Lor subsequently pulled out a handgun and "raised it up." Immediately, Lor's father grabbed the gun and Lor's hand. The two men struggled for possession of the gun, at which point the gun fired a bullet through a television and into a living room wall. Lor's father eventually wrestled the handgun away from Lor and walked away with it.

---

[1] We use a pseudonym to protect the privacy of this minor child.

¶4 Law enforcement also interviewed Saige, and her statements about the incident were consistent with her father's recollection. Saige did not initially discuss Lor's text messages, but she later acknowledged that Lor had messaged her earlier in the day and made several comments about "being done with it all." When an officer asked to see the messages, Saige stated that she had deleted them at Lor's request.

¶5 During the course of their investigation, officers also learned that Lor's vehicle was parked in the driveway. Officers peered into the vehicle and noticed, "in plain view, a cell phone located in the center console." Using the above-described facts, Sergeant Matthew Kuether applied for a warrant to search Lor's vehicle for handguns, electronic devices, and "[a]ny documents tending to show ownership or control." Kuether also requested permission to complete a "forensic analysis of any electronic devices collected." Kuether noted that these items may constitute evidence of Lor committing disorderly conduct while armed. The circuit court subsequently issued the requested warrant.

¶6 After obtaining the warrant, law enforcement searched Lor's vehicle and seized several electronic devices, including the cell phone in the center console. Officers then completed a forensic analysis of only that cell phone. On the phone, officers discovered numerous photographs of Lor engaging in sexual contact and sexual intercourse with a minor child who was related to him. Thereafter, the State charged Lor with a total of twenty-one crimes, consisting of various child sex offenses and possession of child pornography.

¶7 Lor later filed a motion to suppress the evidence obtained from his cell phone, arguing that the warrant used to search his vehicle was facially invalid for lack of probable cause and because the scope of the warrant was "extremely

broad." Lor further argued that the good faith exception to the exclusionary rule did not apply.

¶8 The circuit court held an evidentiary hearing on Lor's motion, at which Sergeant Kuether testified. Among other things, Kuether testified that suspects sometimes delete incriminating text messages. He also testified that "a complete, full forensic analysis of [a] phone" is necessary to locate deleted text messages, which is why he requested a full forensic analysis of Lor's cell phone. After the hearing, the court issued a written decision denying Lor's motion. The court concluded that the warrant, at a minimum, was supported by probable cause to search Lor's cell phone and contained "sufficient particularity."

¶9 Shortly thereafter, Lor pled no contest to repeated sexual assault of the same child, incest with a child, child sexual exploitation, and possession of child pornography. The circuit court imposed consecutive sentences totaling eighteen years' initial confinement followed by twenty-two years' extended supervision.

¶10 Lor later filed a postconviction motion asking the circuit court "to reconsider its earl[ier] ruling on Lor's Motion to Suppress" and to hold an evidentiary hearing to consider additional evidence. Lor explained that he had retained a computer forensics expert, Nick Schiavo, who "would testify that a full forensic examination of a phone such as Lor's was not necessary to locate and recover deleted text messages." Lor asserted that Schiavo's testimony "may be considered newly discovered evidence." In the alternative, Lor suggested that his trial counsel provided ineffective assistance by failing to present evidence showing that a "full forensic examination of the phone was [not] necessary to recover the

deleted text messages" and by failing "to argue that the scope of the search could and should have been limited."

¶11    In a written decision, the circuit court denied Lor's postconviction motion without holding an evidentiary hearing.  The court first addressed the sufficiency of the warrant.  In doing so, the court considered Schiavo's proffered testimony but concluded that his testimony "would not impact the validity of Lor's conviction" because, under the circumstances, "the officers were able to look at the entire contents of the phone when searching for the deleted text messages." Similarly, the court rejected Lor's claims of newly discovered evidence and ineffective assistance of counsel because there was not a reasonable probability that the court would have decided Lor's suppression motion differently based upon Schiavo's testimony.

¶12    Lor now appeals.  Additional facts will be provided as necessary below.

## DISCUSSION

### I.  Validity of the search warrant

¶13    "Whether evidence should be suppressed is a question of constitutional fact."  ***State v. Floyd***, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560 (citation omitted).  We review a circuit court's findings of historical fact under the clearly erroneous standard, but we independently apply constitutional principles to those facts.  ***Id.***

¶14    "The Fourth Amendment of the United States Constitution guarantees that persons shall be secure from 'unreasonable searches and seizures and sets forth the manner in which warrants shall issue.'"  ***State v. Sveum***, 2010

WI 92, ¶18, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted). In particular, the Fourth Amendment imposes three requirements for a valid search warrant:

> (1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.

*Id.*, ¶20.

¶15 Lor's arguments focus on the latter two requirements. Specifically, Lor argues that the affidavit in support of the search warrant failed to show probable cause that his vehicle would contain evidence of disorderly conduct while armed. Lor also contends that the affidavit sought a general warrant and that the warrant itself was overbroad. Accordingly, Lor contends that the circuit court should have granted his motion to suppress.

## A. *Probable cause*

¶16 To determine whether a warrant was issued with probable cause, we review the record before the warrant-issuing judge, including the affidavits supporting the warrant application and all reasonable inferences that may be drawn therefrom. *State v. Green*, 2022 WI 41, ¶2, 402 Wis. 2d 44, 975 N.W.2d 198. We defer to the warrant-issuing judge's determination of probable cause "unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding." *Id.* (citation omitted). "Probable cause exists where, after examining all the facts and inferences drawn from the affidavits, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (citation omitted).

¶17     In this case, the circuit court issued a warrant authorizing law enforcement to search Lor's vehicle and the electronic devices found therein for evidence of Lor committing disorderly conduct while armed.  To support a conviction for that crime, the State needed evidence showing: (1) that Lor "engage[d] in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct"; (2) that the conduct occurred under circumstances in which it tended to cause or provoke a disturbance; and (3) that Lor possessed, used or threatened the use of a dangerous weapon while engaging in the disorderly conduct.  *See* WIS. STAT. §§ 947.01, 939.63(1)(a) (2021-22);[2] *see also* WIS JI—CRIMINAL 1900 (2022); WIS JI—CRIMINAL 990 (2006).

¶18     In the affidavit supporting the search warrant, Sergeant Kuether averred that he had been notified of an incident in which Lor allegedly pulled out a handgun and fired a bullet inside of his father's residence.  The affidavit noted that Lor's father and Saige gave "consistent" statements that Lor had entered the home and pulled out a gun.  Neither Lor's father nor Saige knew that Lor owned a handgun.

¶19     The affidavit also stated that Lor's vehicle had been located nearby and that Sergeant Kuether observed a cell phone sitting in the vehicle's center console.  The affidavit suggested that the cell phone might contain text messages, along with other information, "related to the planning, intent, or execution of this crime."  The affidavit specifically noted that the phone might contain text messages between Lor and Saige.  Indeed, both Lor's father and Saige had

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

informed law enforcement that Lor had texted Saige earlier that day. Saige recalled that Lor had talked "about being done with it all" and later requested that Saige delete those text messages. Lor's father also told law enforcement that Saige had asked to go over to a friend's house before the incident "due to family stress." All of these facts were before the warrant-issuing judge and established a fair probability that Lor's vehicle—and, specifically, the cell phone spotted in the center console—contained evidence that Lor had committed disorderly conduct while armed.

¶20    As the affidavit suggested, one could reasonably infer that the cell phone in Lor's vehicle belonged to Lor and would contain information related to his planning, intent, and execution of disorderly conduct while armed. Many of the facts—including Lor's "being done with it all" comments, his request that Saige delete text messages, and Saige's desire to leave the home due to "family stress"—suggested that Lor's communications with Saige were interconnected with his eventual crime of disorderly conduct while armed and that those communications would be stored on his phone. As the circuit court aptly noted, Lor's request that Saige delete the text messages showed a consciousness of guilt, which creates a reasonable inference that Lor was attempting to conceal his thoughts and behavior leading up to the incident.

¶21    Further, as the affidavit also suggested, one could infer that Lor's phone contained "other information," such as information regarding his ownership or control of both his phone and the handgun used in the underlying incident. Information that Lor owned or possessed the handgun was important to the State's case because the State needed to prove that Lor possessed, used or threatened the use of a dangerous weapon. *See* WIS. STAT. § 939.63(1)(a). Inherently, the State also had to disprove any possible allegation that someone other than Lor used the

gun during the incident. Indeed, this may have been a possible defense based on Lor's father's and Saige's statements that they did not know Lor owned a handgun. Finally, Lor's ownership or control of the phone was an important fact to prove that he sent the messages to Saige and to connect him to any evidence of the crime of disorderly conduct while armed found on the cell phone.

¶22    Lor criticizes law enforcement's effort to discover his text messages because the State was not required to prove his intent in order to establish that he committed disorderly conduct while armed. Be that as it may, Lor's state of mind was relevant to proving whether Lor engaged in disorderly conduct that provoked a disturbance. "'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01 (emphasis added). Ultimately, information showing that Lor was depressed or upset would, in turn, make it more likely that he acted disorderly in a manner that provoked a disturbance. For that reason, we also reject Lor's related argument that his text messages were irrelevant because the text messages themselves were not "disorderly statement[s]" that caused or provoked a disturbance. Again, the text messages were relevant to show Lor's disconcerting state of mind leading up to and during the incident.

¶23    Lor also contends that the affidavit lacked probable cause because the facts were mostly "undisputed," the witnesses gave "largely consistent" accounts of what occurred, and he never denied the allegations in any way. In other words, Lor contends that there was no probable cause for the circuit court to find that further relevant evidence would be located on his phone because the State had already collected more than enough evidence to convict him of disorderly conduct while armed. Lor, however, cites no legal authority—nor have we

independently identified any authority—stating that probable cause dissipates once the State has developed a strong case for a particular crime. Thus, we need not consider this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is unsupported by legal authority). Regardless, given the State's high burden of proving a criminal offense beyond a reasonable doubt and the possibility that witnesses might change their accounts or forget certain facts, we cannot discern any reason why officers should be prohibited from obtaining a search warrant supported by probable cause after they have already developed a strong case.

¶24 Finally, Lor argues that the affidavit omitted important facts, such as whether law enforcement had recovered the gun fired during the incident, whether Lor had access to his vehicle, and whether Lor was in custody. *See State v. Mann*, 123 Wis. 2d 375, 385-86, 367 N.W.2d 209 (1985) (permitting an attack on criminal complaints—consistent with *Franks v. Delaware*, 438 U.S. 154 (1978)— where "there has been an omission of critical material where inclusion is necessary for an impartial judge to fairly determine probable cause"). However, even if the search warrant had included those facts, they would not have negated the reasonable inferences that Lor's vehicle and the cell phone in that vehicle contained evidence that would aid in the State's prosecution of Lor for disorderly conduct while armed. "And that's all that is needed. 'Probable cause is not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior.'" *Green*, 402 Wis. 2d 44, ¶7 (citation omitted). Here, the facts presented to the warrant-issuing judge provided a sufficient basis to find the existence of probable cause, and we therefore defer to that finding. *See id.*, ¶2.

10

## B. *Particularity of the search warrant*

¶25    The Fourth Amendment seeks, in part, "to protect against the abuses of the general warrants that had occurred in England." *Steagald v. United States*, 451 U.S. 204, 220 (1981). Historically, a general warrant "specified only an offense … and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Id.*

¶26    The warrant in this case described both the place to be searched (Lor's vehicle) and the objects of the search (handguns, electronic devices, and documents tending to show ownership or control of a gun[3]). The warrant also authorized a forensic analysis of the electronic devices seized from Lor's vehicle. Thus, contrary to Lor's argument, the warrant at issue was not a general warrant because it described the alleged offense and specified—as well as limited—the places to be searched.

¶27    An otherwise valid warrant can nonetheless be transformed into a general warrant where the search "is conducted in 'flagrant disregard' of the limitations in the warrant." *State v. Rindfleisch*, 2014 WI App 121, ¶22, 359 Wis. 2d 147, 857 N.W.2d 456 (citation omitted). Under those circumstances, "all items seized—even items within the scope of the warrant—[must be] suppressed." *Id.* However, where an officer has merely exceeded the scope of a search warrant, the typical remedy "is to suppress only items seized outside the scope of the warrant." *Id.*

---

[3] Although the search warrant did not expressly state the subject or subjects of the "documents tending to show ownership or control," one could reasonably infer from the other items mentioned in the warrant that the sought-after documents would show Lor's ownership or control of his handgun, phone, or vehicle.

¶28    Here, law enforcement searched Lor's vehicle and completed a forensic examination of his cell phone—both of which were expressly authorized by the search warrant.  Although Lor claims that "[t]he intended scope of the warrant and search of [his] cell phone was to discern the content of text messages," the warrant plainly authorized a "forensic analysis of any electronic devices collected."  Law enforcement therefore did not exceed the scope of the search warrant, nor did they conduct their searches in flagrant disregard of the warrant's limits.  *See id.*  Accordingly, law enforcement's actions did not transform the search warrant into a general warrant.

¶29    In the alternative, Lor argues that the search warrant was overbroad because it allowed law enforcement to search areas of his phone in which law enforcement had no probable cause to believe there would be evidence of his disorderly conduct while armed.  Lor claims that the sole object of law enforcement's search was his text messages and that law enforcement could have limited its search of his phone to those messages.  Lor also suggests throughout his appellate briefing that the warrant lacked probable cause to search his vehicle for handguns or to search any additional electronic devices other than his cell phone.

¶30    As an initial matter, even if we assume that the search warrant lacked probable cause to search Lor's vehicle for handguns or to search any electronic device other than his cell phone, Lor would not be entitled to the suppression of any evidence.  Law enforcement never found any handguns in Lor's vehicle, nor did they search any electronic devices other than Lor's cell phone.  "The proper remedy for [a] partially defective order is to 'strik[e] from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause.'"  *Sveum*, 328 Wis. 2d 369, ¶51 (second and third alterations in original; citation omitted).  Therefore, "we strike the portions of the order that we

12

assume, arguendo, are defective"—i.e., the authorizations to search for additional handguns and any electronic devices other than Lor's cell phone. *See id.* "However, the other portions of the order remain," *see id.*, and, thus, the warrant language authorizing law enforcement to search Lor's cell phone remains.

¶31    Lor's argument challenging the warrant's authorization to search his entire cell phone also fails.  Lor argued in his motion to suppress and in his circuit court briefing that the scope of the warrant was "extremely broad" because it authorized a full forensic search of his phone, which is akin to a search of his entire digital life.  However, Lor did not argue—as he does now—that the search of his cell phone was unlawful because law enforcement could have limited its search to certain areas of his phone.  Lor also did not present any evidence at the suppression hearing that law enforcement could have limited its search. Accordingly, Lor forfeited direct review of this issue. *See State v. Huebner*, 2000 WI 59, ¶¶10-11, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (arguments not made to the circuit court are generally deemed forfeited and will not be considered on appeal).

¶32    Lor concedes in his reply brief that his "motion to suppress did not raise the issue of whether a more limited search of the phone could have been conducted."  Nonetheless, he points out that the State responded to the merits of this argument in the circuit court.  While Lor's argument is unclear, to the extent he is suggesting that the State forfeited its forfeiture argument, we disagree.  The State, as the respondent, can raise new arguments on appeal that support the circuit court's ruling. *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 (we may consider new arguments raised by respondents seeking to uphold circuit court rulings and can affirm a ruling on a theory or reasoning not presented to the lower court).  Furthermore, Lor has not

presented any basis for us to conclude that the State might be prohibited from arguing forfeiture on appeal after addressing the merits of an argument in the circuit court.[4]

## II. Lor's right to an evidentiary hearing on his postconviction motion

¶33     Lor next argues that the circuit court erroneously denied his postconviction motion without an evidentiary hearing.  He contends that Schiavo would have testified that law enforcement had the technology to limit its search to only the text messages on Lor's cell phone.  Based on this testimony, Lor insists that "[t]he record was not conclusive that the warrant was obtained properly and properly limited as to the scope of the search."  In other words, Lor contends that the court should have held an evidentiary hearing to consider whether the warrant was overbroad based on Schiavo's testimony.

¶34     A circuit court has discretion to deny a postconviction motion without an evidentiary hearing if the motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief."  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We determine de novo "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."  *Id.*

---

[4] Because we conclude that the evidence sought to be suppressed was not obtained pursuant to a facially invalid warrant, we need not address the State's alternative argument that the evidence should not be suppressed pursuant to the exclusionary rule's good faith exception. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).

¶35 Lor's argument arises in the context of claims of newly discovered evidence and ineffective assistance of counsel.[5] After sentencing, a defendant may be allowed to withdraw a no-contest plea if the defendant establishes, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice.[6] *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). A manifest injustice can be established through newly discovered evidence, *id.*, or through a showing that the defendant received constitutionally ineffective assistance of counsel, *State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838.

¶36 To obtain plea withdrawal on the basis of newly discovered evidence, a defendant must show, among other things, that there is "a reasonable probability … that a different result would be reached in a trial" with the new evidence. *State v. Love*, 2005 WI 116, ¶44, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted). Likewise, a successful ineffective assistance of counsel claim requires, among other things, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

---

[5] The State argues that Lor has abandoned his arguments regarding newly discovered evidence and ineffective assistance of counsel by not raising those issues on appeal. In response, Lor argues that he did not abandon those issues because his "brief-in-chief clearly challenged the [circuit] court's denial of his postconviction motion without a hearing." We recognize that Lor's argument could have been clearer. But—given Lor's arguments in the circuit court and our conclusion that he forfeited a direct challenge to the search warrant's language authorizing a forensic search of his cell phone—Lor's final argument is most reasonably construed as a claim involving newly discovered evidence or ineffective assistance of counsel. Therefore, we will address Lor's argument in those contexts.

[6] Although Lor does not expressly request to withdraw his pleas, that remedy appears to be the most consistent with Lor's argument and with his request that we reverse his judgment of conviction. Accordingly, we construe Lor's postconviction motion as a motion to withdraw his pleas based upon newly discovered evidence or ineffective assistance of counsel.

¶37    The circuit court rejected Lor's claims of newly discovered evidence and ineffective assistance of counsel, concluding that "the outcome would not have changed" if Lor had presented Schiavo's testimony at the original suppression hearing.  We agree.

¶38    To satisfy the particularity requirement of the Fourth Amendment, a warrant must enable the searcher to reasonably ascertain and identify the things that are authorized to be seized.  *Sveum*, 328 Wis. 2d 369, ¶27.  "A general description of the items to be seized is constitutionally acceptable when a more specific description is not available."  *Id.*  Whether the language of the search warrant meets constitutional requirements for reasonableness is a question of law that we review de novo.  *State v. Schaefer*, 2003 WI App 164, ¶24, 266 Wis. 2d 719, 668 N.W.2d 760.

¶39    Here, the warrant described Lor's vehicle as the place to be searched and authorized a "forensic analysis of any electronic devices collected" therein, including Lor's cell phone.[7]  Although Schiavo would have testified—as Lor asserts—that officers could have limited their search to only Lor's text messages, officers were not required to do so under the circumstances, nor was the warrant overbroad by granting officers the right to search the entire phone.

¶40    As discussed earlier, officers had probable cause to search wherever evidence of Lor's messages might have been located on his phone, including Lor's text messages and messages sent within other applications.  Further, Lor ignores

---

[7] For purposes of this particular argument, Lor does not dispute that the warrant's language authorized officers to search his cell phone for messages between himself and Saige. Lor also acknowledges that officers were entitled to search "the phone log for texts shortly before the offense."

the fact that images of text messages are easily created and saved on a cell phone by taking a screen shot of such text messages.

¶41     Significantly, the warrant also authorized officers to search for "[a]ny documents tending to show ownership or control," including documents showing Lor's ownership or control of the cell phone and the handgun used in the incident.     Based on this language, officers were entitled to search—at a minimum—the images on Lor's cell phone, which is where officers discovered the evidence of child pornography and sexual assault.  Such a search was supported by probable cause because there was a "fair probability" that the images on Lor's phone might portray him using the cell phone (e.g., a photograph or video that Lor took of himself) or him possessing the handgun at issue.  *See **Green***, 402 Wis. 2d 44, ¶2.  Evidence of this nature would make it more likely that Lor owned or controlled the cell phone as well as the handgun used in the incident.

¶42     Moreover, as the circuit court aptly recognized, "[t]here is no evidence in the record to indicate that the officers knew they could locate … evidence [of Lor's ownership and control of the phone and handgun] by limiting their search of the phone to specific files or file types."  Indeed, that evidence could have also been found in a number of places other than the images and text messages on the phone, including in the phone's videos, emails, and voicemails.  Thus, even assuming that the officers had the capability of limiting their search, the circumstances of this case did not require that they do so.

¶43     Lor acknowledges that officers were entitled to search his phone for documents tending to show his ownership of the phone, but he nonetheless argues that those documents "were most likely to be in [the phone's] 'User Accounts' rather than [the phone's] 'Images.'"  Even if we assume that statement is true,

17

such a fact does not negate the probable cause to also search for images of Lor using the cell phone. In addition, Lor fails to respond to the State's argument that evidence of his ownership and control of the handgun at issue could have been found among the images on his cell phone. Lor therefore concedes that argument. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶44 Lor suggests that officers should have searched his phone using a step-by-step approach—first searching his text messages and then applying for an additional warrant if the initial search did not reveal the relevant text messages. This argument is a nonstarter. Again, the warrant permitted officers to search for evidence other than Lor's text messages, including images providing evidence of his ownership and possession of the phone and handgun. Furthermore, Lor cites no legal authority *requiring* officers to employ this step-by-step approach when they have probable cause to search other areas of the phone.

¶45 Finally, Lor cites several federal cases to show that a search of a cell phone can be limited to specific parts of the phone and that suppression of evidence may be appropriate where the warrant does not particularly describe the areas to be searched on the cell phone. *See **United States v. Carey***, 172 F.3d 1268 (10th Cir. 1999); ***United States v. Morton***, 984 F.3d 421 (5th Cir. 2021), *rev'd en banc*, 46 F.4th 331 (5th Cir. 2022); and ***United States v. Winn***, 79 F. Supp. 3d 904 (S.D. Ill. 2015). None of these cases, however, are binding authority or present an analogous set of circumstances. Again, we assume, consistent with Schiavo's proffered testimony, that the officers could have limited their search to particular files and data on Lor's cell phone. Nonetheless, the warrant in this case authorized officers to search the images and other files on Lor's phone for documents tending

18

to show his ownership or control of the phone and of the handgun used in the incident.

¶46    Based on the foregoing analysis, we agree with the circuit court's conclusion that Lor cannot prevail under either a newly discovered evidence claim or an ineffective assistance of counsel claim. Both claims fail because there is not a "reasonable probability" of a different result on Lor's suppression motion if Schiavo's testimony had been presented at the original suppression hearing. *See Love*, 284 Wis. 2d 111, ¶44; *Strickland*, 466 U.S. at 694. In other words, even if Schiavo had testified at the original hearing and his testimony was credited, that testimony would not have changed the fact that the warrant was sufficiently particular under the circumstances and supported by probable cause. Accordingly, the court did not erroneously exercise its discretion by denying Lor's postconviction motion without holding an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.